UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR LAMOND JORDAN, SR., <br> *Plaintiff*, <br> *v.* <br> STEPHEN SHEEHY, <br> *Defendant*. | Civil No. 3:11cv1415 (JBA) <br><br> March 11, 2013 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Victor Lamond Jordan, Sr. commenced this action pro se against Defendant Judicial Marshal Stephen Sheehy. Plaintiff contends that Defendant used excessive force against him in that he struck him in the face during an altercation. Defendant now moves [Doc. # 15] for summary judgment. For the reasons that follow, Defendant's motion is granted.

**I.   Factual Background[1]**

On June 23, 2009, Plaintiff was taken to the Waterbury Superior Court for jury selection. While awaiting commencement of his court proceeding, Plaintiff was held in a cell in the inmate holding area. At approximately 10:30 a.m., Defendant was ordered to escort Plaintiff from the holding area to a courtroom. Defendant entered Plaintiff's cell and applied leg shackles.

During this time, a verbal exchange occurred. Jordan alleges that Defendant was rushing him and made racially derogatory remarks and threats. Defendant contends that Plaintiff was being verbally abusive, refused to be handcuffed and refused to attend the court proceeding.

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and attached exhibits, including a DVD recording of the security footage of the incident in question.

1

Defendant left the cell to obtain assistance from another judicial marshal. Defendant realized that the cell door was open and turned to close it, but Plaintiff had followed Defendant out of the cell. When Defendant turned to face him, Plaintiff spat in his face. Defendant immediately turned his head away and hit Plaintiff once in the face with his right hand. Plaintiff lunged toward Defendant and grabbed Defendant's left forearm. Two other judicial marshals intervened. One of the marshals restrained Plaintiff and returned him to his cell.

Plaintiff was taken to Waterbury Hospital where he was diagnosed with a facial contusion, that is, a bruise with swelling under the skin. Upon his return to the correctional facility, medical staff examined Plaintiff and observed no swelling, redness or bruising. However, a small laceration inside Plaintiff's left lip was observed. Plaintiff complained of mild pain and was treated with ice and Motrin.

Criminal assault charges against Plaintiff stemming from the incident were dismissed. However, Plaintiff pled guilty to prison disciplinary charges for assaulting Defendant. He was sanctioned with seven–days' confinement in punitive segregation, thirty–days' loss of recreation and thirty–days' loss of telephone privileges.

**II.     Discussion**[1]

Defendant argues that summary judgment should be granted in his favor because Plaintiff has failed to establish that his Eighth Amendment[2] rights were violated, and because this matter is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[3] To prevail on an Eighth Amendment excessive force claim, Plaintiff must demonstrate that force used against him constituted cruel

---

[1] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[2] While "the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment," *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999), "[a]fter conviction, the Eight Amendment serves as the primary source of substantive protection in cases where the deliberate use of force is challenged as excessive and unjustified," *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (internal quotation marks omitted). Although the incident occurred when Plaintiff was taken to state court for jury selection, Department of Correction records reveal that, in June 2009, when this incident took place, Plaintiff was already serving an eighty–four year sentence imposed on December 5, 2008. www.ctinmateinfo.state.ct.us (last visited Mar. 11, 2012).  Thus, the Eighth Amendment, not the Fourteenth Amendment, governs Jordan's claim.  However, "[t]he Second Circuit applies the same standard to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment."  *Virella v. Pozzi*, No. 05 Civ. 10460(RWS), 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (citing *Walsh*, 194 F.3d at 48 ("[W]e conclude that the *Hudson* analysis is applicable to excessive force claims brought under the Fourteenth Amendment as well.")). Therefore, the Court concludes that Plaintiff's claims would fail under either the Fourteenth or the Eighth Amendment.

[3] Because the Court finds that Plaintiff has not established that his constitutional rights were violated, it will not address the Government's *Heck v. Humphrey* argument.

and unusual punishment. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). A court considers objective and subjective components to such an excessive force claim. *See id.* at 268 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992). The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind. *See Hudson*, 503 U.S. at 9–10; *see also Wright*, 554 F.2d at 268 ("The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'"). The subjective component focuses on whether the official had a "wanton" state of mind when they were applying the allegedly excessive force. *Hudson*, 503 U.S. at 8. "When prison officials are accused of using excessive force, the wantonness issue turns on whether the force was applied in a good–faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 7). "Accordingly, where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically," summary judgment is not proper. *Id.* at 269.

"The use of excessive force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury," and thus an excessive force claim cannot be decided merely by considering the extent of an inmate's injuries. *See Wilkins v. Gaddy*, 130 S. Ct. 1175, 1176–77 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 4). Instead, the court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm. *See Hudson*, 503 U.S. at 7. Other factors to be considered are the need for the

4

use of force, the threat perceived by correctional staff, the relationship between the perceived threat and the amount of force used, and any efforts made to temper the severity of a forceful response. *See id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). However, "the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wright*, 554 F.3d at 269 (quoting *Hudson*, 503 U.S. at 10). This approach is consistent with the view that "[e]xcessive force does not, in and of itself, establish malice or wantonness for Eighth Amendment purposes." *Romano v. Howarth*, 998 F.2d 101, 106 (2d Cir. 1993); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

Not surprisingly, the affidavit submitted by Defendant describing the incident differs from Plaintiff's affidavit. Plaintiff alleges that when Defendant entered the cell, Defendant "was being aggressive and rushing [Plaintiff]," and that Defendant directed derogatory racial comments toward Plaintiff. (*See* Jordan Aff., Ex. A to Pl.'s Opp'n [Doc. # 24] ¶ 4.) Defendant claims that when he entered the cell, Plaintiff became verbally abusive, threatening to spit on him and refusing to be handcuffed and escorted to the courtroom. (*See* Sheehy Aff., Ex. D to Def.'s Mem. [Doc. # 15] ¶ 3.) However, both parties in this case rely on the video recording submitted by Defendant. (*See* Ex. C to Def.'s Mem.) The video shows that Defendant exited the cell with his back turned to Plaintiff, and that Plaintiff followed Defendant out of the cell. Plaintiff admits that he threatened Defendant to "put my Black piece of dirt a** down" and then spat in Defendant's face. (*See* Pl.'s Loc. R. 56(a)(2) Stmt [Doc. # 21–1] ¶ 11.) The video then shows

5

Defendant striking Plaintiff once on the cheek with a closed fist, and Plaintiff grabbing Defendant's forearm.

Correctional officers are allowed to use physical force against an inmate to maintain discipline, order, safety, and security. *See* Department of Correction Administrative Directive 6.5(4)(A), www.ct.gov/doc.LIB/doc/PDF/_AD.ad0605.pdf (last visited , Mar. 11, 2013). When confronted by a disturbance, correctional officers must balance the threat the disturbance poses to inmates, staff and others against the harm the inmate might suffer if force is used. This decision is made quickly and under pressure. "Spitting on another is almost universally acknowledged as contemptuous and is calculated to incite others to act in retaliation." *State v. Hawley*, 102 Conn. App. 551, 555 (2007). Plaintiff, who was unrestrained, provoked a confrontation by exiting the cell, taunting Defendant and spitting in Defendant's face. (*See* Jordan Aff., Ex. A. to Pl.'s Opp'n [Doc. # 24] ¶ 3.) Defendant responded, it appears reflexively, by striking Jordan in the face once.

As the Supreme Court has recognized, not every malevolent touch by a prison guard gives rise to a federal cause of action. *See Hudson*, 503 U.S. at 9. Thus, under circumstances similar to those found in this case, the Third Circuit held as a matter of law that "a single punch [by a correctional officer] to avoid being spit upon is not the sort of action that is repugnant to the conscience of mankind." *Reyes v. Chinnici*, 54 F. App'x 44, 47 (3d Cir. 2002). In *Reyes*, the plaintiff was a prisoner in a high–security unit where he was handcuffed whenever he was moved outside of his cell. *Id.* at 45–46. The defendant prison guard had previously told the plaintiff that the plaintiff was "going down" if he spit at the defendant. *Id.* at 46. While the defendant was

returning the plaintiff, who was handcuffed, to his cell, the plaintiff pursed his lips as if to spit at defendant. *Id.* In response, the defendant struck the plaintiff in the neck and shoulder. *Id.* The defendant was immediately returned to his cell and received medical attention for shoulder swelling as a result of the incident. *Id.* The Third Circuit upheld the district court's grant of summary judgment in favor of the defendant, recognizing that "it is certainly unreasonable and would undermine institutional discipline to expect a corrections officer to simply allow himself to be spit upon." *Id.* The court also found that the amount of force used was *de minimus* and the plaintiff's injury was so minor that a court could "safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Id.* at 48–49 ("[W]e hold that, given the facts of this case, [the defendant's] actions were not repugnant to the conscience of mankind and did not violate [the plaintiff's] Eighth Amendment right to be free from cruel and unusual punishment.")

Here, unlike in *Reyes*, Plaintiff had walked out of his cell, taunted Defendant, and actually spit in Defendant's face. As the Third Circuit recognized, it would be "unreasonable and would undermine institutional discipline" to expect Defendant to allow himself to be spit upon without a forceful reaction. Plaintiff's threatening and disrespectful actions posed a threat to Defendant, to other guards and court personnel, and to institutional discipline, the force Defendant used in response was to strike Plaintiff only once, and Plaintiff suffered only minor injuries for which he received swift medical attention. Several district courts have found under similar circumstances that a single punch may constitute *de minimus* force for Eighth–Amendment purposes. *See, e.g.*, *Mason v. Rich*, Civil No. 3:10cv397 (JBA), 2011 WL 4345025, at *3 (D. Conn. Sept. 15, 2011)

(single punch is *de minimus* where plaintiff disobeyed orders and refused to stop fighting with another inmate); *DeArmas v. Jaycox*, No. 92 Civ. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (finding force used was *de minimus* where defendant punched plaintiff in the arm and kicked him in the leg, allegedly in retaliation for bringing a grievance against defendant); *Ramos v. Hicks*, No. 87 Civ. 2272 (LBS), 1988 WL 80176, at *2 (S.D.N.Y. July 25, 1988) (single punch to the mouth resulting in a cut lip not excessive force where inmate ignored orders, became agitated and attempted to damage state property); *see also Smith v. Hulick*, No. 97-801, 1998 WL 84019 (E.D. Pa. Feb. 25, 1998), *aff'd*, 208 F.3d 206 (3d Cir. 2000) (summary judgment granted for defendant correctional officer where defendant punched plaintiff, who was not in restraints, once in the face and tackled the plaintiff after the plaintiff disobeyed orders).  Thus, based on an analysis of the *Hudson* factors, the force used by Defendant under the circumstances was not of the kind that is "repugnant to the conscience of mankind."

The only disputed facts in this case relate to whether or not Defendant made inflammatory racial comments to Plaintiff before exiting Plaintiff's cell.  Although "verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983," the Second Circuit has recognized that such taunts may be evidence of malicious intent under some circumstances.  *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010).  In *Cole*, the Second Circuit found that it was possible to infer the defendant's use of force was malicious where the defendant, while striking the plaintiff in the face without provocation, "simultaneously made racially and religiously derogatory remarks," after the plaintiff turned

8

down the defendant's offer of a corrupt deal.  *Id.* at 42.  However, in this case, at the time of Plaintiff's actions, Defendant had his back turned and was not speaking to Plaintiff.  Thus any alleged taunts by Defendant had ended.  Furthermore, Defendant struck Plaintiff only after the intervening provocation by Plaintiff, daring Defendant to "put [Plaintiff's] Black piece of dirt a\*\* down" and spitting in Defendant's face.  Thus, unlike the circumstances in *Cole*, Defendant's alleged verbal abuse was not contemporaneous with his use of force so as to demonstrate malicious intent, and Defendant use of force was a direct and immediate response to Plaintiff's verbal and physical provocation.  Therefore, even taking Plaintiff's version of events as true, reasonable jurors could not find, given Plaintiff's admitted provocation and his minimal injuries, that Defendant acted with malicious intent to harm Plaintiff.

Applying the *Hudson* factors, Plaintiff has not offered evidence establishing that the force used by Defendant is "repugnant to the conscience of mankind," and thus Plaintiff has failed to establish the objective component of his cruel and unusual punishment claim.  Therefore, his excessive force claim does not rise to the level of an Eighth Amendment violation cognizable under Section 1983.

## IV. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. #15] is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March, 2013.